**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Gregory David Tamplin,<br><br>       Petitioner,<br><br>v.<br><br>David Shinn, *et al.*,<br><br>      Respondents. | No. CV-20-0548-TUC-CKJ (EJM)<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the Court is Petitioner Gregory David Tamplin's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 1). Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 13) and Petitioner replied (Doc. 14). The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1) as untimely.

. . .

. . .

. . .

. . .

. . .

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

2

*A.      Initial Charge, Trial, and Sentencing*

3

The Arizona Court of Appeals stated the facts[2] as follows:

4
5
6
7
8
9
10
11
12
13
14

> Sometime after midnight on November 13, 1990, A. woke to the sound of banging on her front door. Thinking it was her fiancé, R., returning from work without his key, she answered the door. A. was unaware that R. had already returned from work and was lying in the bed next to her. When she opened the door, Tamplin forced his way in, held a gun to her face, grabbed her arm, and walked her toward the bedroom, where R. was standing. Tamplin then ordered R. to lie down on the bed and said, "you owe me big." R. repeatedly begged Tamplin not to shoot, but Tamplin shot him multiple times, killing him. Tamplin then sexually assaulted A. twice in the living room before leaving the apartment, taking with him a bike, $5.00 in quarters, and a gold watch. A. called 9-1-1 from a neighbor's apartment, and during her police interview later that morning, she gave a description of the assailant. At a follow-up interview on November 15, she met with a police sketch artist who used A.'s description to create a composite sketch. No suspect was identified during the initial investigation and the case remained unresolved for a number of years.

15
16
17
18
19
20
21
22
23

> In 2003, Tucson Police Department (TPD) detectives conducted a "cold case" review and requested the TPD crime laboratory analyze DNA samples from evidence collected during the initial investigation.[2] The samples ultimately were tested in 2007, and a comparison against known DNA profiles revealed a match with a DNA profile for Tamplin. To verify the match, detectives obtained a buccal swab from Tamplin and a new profile prepared from that sample matched the DNA profile from the samples that had been collected during the initial investigation. In August 2007, detectives interviewed A. and told her that a DNA match had been made. A. was shown a photographic lineup consisting of six pictures and asked if she recognized anyone. Although A. was unable to state conclusively that she recognized any of the persons as her assailant, she told the detectives she had a "deep feeling" about Tamplin's photograph.

24
25

---

26
27
28

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519 (1982).

[2] At the time the offense was committed, DNA testing was not yet being conducted in the Tucson Police Department crime laboratory.

Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision at 4–6[3] (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).   "Tamplin was indicted in December 2007."  *Id.*, Exh. "A" at 6.  On July 14, 2009, following a jury trial, Petitioner was found guilty of one (1) count of first degree murder, two (2) counts of armed robbery, two (2) counts of sexual assault, one (1) count of aggravated assault with a deadly weapon/dangerous instrument, one (1) count of kidnapping, and one (1) count of first degree burglary.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Minute Entry at 25–27 (Pima Cnty. Super. Ct. July 14, 2009) (Exh. "B") (Doc. 13-1).  On August 28, 2009, Petitioner was sentenced to a terms of imprisonment including life with the possibility of parole after 25 calendar years on the first degree murder count; presumptive terms of 10.5 years for each of the armed robbery counts to be served concurrently with one another, as well as the first degree murder count, and followed by terms of community supervision; presumptive terms of 7 years for each sexual assault count to be served to consecutively to one another, as well as all other previously imposed terms, and followed by terms of community supervision; a presumptive term of 7.5 years for the aggravated assault with a deadly weapon/dangerous instrument count to be served concurrently with the other terms, and followed by a term of community supervision; a presumptive term of 10.5 years for the kidnapping count to be served concurrently with the other terms, and followed by a term of community supervision; and a presumptive term of 10.5 years to be served concurrently with the other counts, and followed by a term of community supervision. Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Sentence of Imprisonment at 31–35 (Pima Cnty. Super. Ct. Aug. 28, 2009) (Exh. "C") (Doc. 13-1).

   **B.  *Direct Appeal***

   On September 3, 2009, counsel for Petitioner filed a Notice of Appeal.  *See* Answer (Doc. 13), Def.'s Not. of Appeal, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super.

_____

[3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

Ct. Sept. 3, 2009) (Exh. "D") (Doc. 13-1).  On May 4, 2010, counsel for Petitioner filed an Opening Brief asserting six (6) issues for review.  *See* Answer (Doc. 13), Appellant's Opening Br., *State v. Tamplin*, No. 2 CA-CR 2009-0297 (Ariz. Ct. App. May 4, 2010) (Exh. "E") (Doc. 13-1).  First, Petitioner asserted that "the trial court erred in denying Mr. Tamplin's motion to suppress [A.'s] identification of him as the perpetrator."  *Id.*, Exh. "E" at 42, 53, 64–72.  Petitioner alleged that the photo array was unduly suggestive, and therefore, did not comply with due process.  *Id.*, Exh. "E" at 64–66.  Petitioner argued that A.'s pretrial identification violated his due process rights, and he was prejudiced by the trial court's refusal to suppress it.  Answer (Doc. 13), Exh. "E" at 66–72.  Next, Petitioner asserted that the prosecutor made improper comments during closing arguments requiring reversal.  *Id.*, Exh. "E" at 42, 53, 73–85.  Petitioner urged that the prosecutor commented on his failure to testify and vouched for the strength of the DNA evidence.  Answer (Doc. 13), Appellant's Opening Br. at 73–85, *State v. Tamplin*, No. 2 CA-CR 2009-0297 (Ariz. Ct. App. May 4, 2010) (Exh. "E") (Doc. 13-1).  Petitioner argued that "the cumulative impact of those comments prejudiced Mr. Tamplin, violated state and federal due process, and require a new trial."  *Id.*, Exh. "E" at 85.  Third, Petitioner asserted that "the trial court's instructions on mental states for first and second degree murder informed the jurors that intent and premeditation can be inferred from circumstantial evidence but did not instruct them that knowledge or recklessness could likewise be inferred from the circumstances."  *Id.*, Exh. "E" at 88 (citations omitted).  Petitioner argued that "[t]he jury was misled into applying the circumstantial evidence instruction only to premeditation and the culpable mental state of intent, which applied to all of the charged offense[s]."  *Id.*, Exh. "E" at 88 (citations omitted).  Petitioner urged that this instruction violated his "rights to due process and trial by an impartial jury."  *Id.*, Exh. "E" at 86, 89 (citing U.S. Const. amends. V, VI, XIV; then citing Ariz. Const. art. II, §§ 4, 23, 24).  Fourth, Petitioner asserted that all counts other than first degree murder were barred by the statute of limitations.  Answer (Doc. 13), Appellant's Opening Br. at 42, 53, 91–104, *State v. Tamplin*, No. 2 CA-CR 2009-0297 (Ariz. Ct. App. May 4, 2010) (Exh. "E") (Doc. 13-1).  Petitioner argued that "the holdings

in *Aguilar*[4] and *Gum*[5] violate Arizona's retroactivity law and require an *ex post facto* application of the law in violation of the United States and Arizona Constitutions." *Id.*, Exh. "E" at 92 (citing U.S. Const. art. I, § 9; then citing Ariz. Const. art. II, § 25).  Fifth, Petitioner asserted that "[t]he trial court's imposition of community supervision constituted an illegal sentence." *Id.*, Exh. "E" at 42, 53, 104–105.  Petitioner argued that the imposition of consecutive terms of community supervision would improperly require a period of supervision beyond the period of imprisonment required by statute. *Id.*, Exh. "E" at 105.  Sixth, Petitioner asserted that the trial court improperly instructed the jury on reasonable doubt, because the instruction relied on *Portillo*[6] and "defines a 'clear and convincing' standard, which is lower than the standard constitutionally required in criminal cases[] and . . . impermissibly shifts the burden of proof." *Id.*, Exh. "E" at 106 (citations omitted).

On November 29, 2010, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences, with the exception of the trial court's imposition of community supervision, which it vacated. *See* Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).  The court of appeals addressed each of Petitioner's allegations. *See id.*  First, the appellate court considered the trial court's denial of Petitioner's motion to suppress.  Answer (Doc. 13), Exh. "A" at 6–10.  Regarding the Petitioner's claim that the pre-trial identification procedure violated his due process rights, the appellate court recognized that "[t]rial courts apply a two-part test to determine if a procedure has complied with due process—whether the procedure [wa]s unduly suggestive and, if so, whether the unduly suggestive procedure [wa]s cured by the reliability of the identification made pursuant to that procedure." *Id.*, Exh. "A" at 7 (citing *Manson v. Brathwaite*, 432 U.S. 98, 107–14 (1977)).  The appellate court observed that "[a] photographic array is not unduly suggestive so long as it 'depict[s] individuals who basically resemble one another such that the suspect's photograph does

---

[4] *State v. Aguilar*, 178 P.3d 497 (Ariz. Ct. App. 2008).

[5] *State v. Gum*, 153 P.3d 418 (Ariz. Ct. App. 2007).

[6] *State v. Portillo*, 898 P.2d 970 (Ariz. 1995).

not stand out.'"  Answer (Doc. 13), Exh. "E" at 8 (citing *State v. Phillips*, 46 P.3d 1048, 1054 (Ariz. 2002)) (second alteration in original).  The appellate court did not find anything "in the record to suggest that the photographic array was unduly suggestive . . . nor . . . [did it find] any authority to support [Petitioner's] contention that the failure to administer a warning that the suspect may not be depicted in the array renders the procedure unduly suggestive."  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision at 8 (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).  Next, the appellate court considered whether A.'s internet research the week before trial, which resulted in her discovery of the same photograph that had been sued in the photographic lineup, rendered A.'s in-court identification unreliable.  *Id.*, Exh. "A" at 9.  The appellate court observed that "[g]enerally, for an in-court identification to be impermissibly tainted and thus inadmissible, the defendant must establish that the taint had been caused by state action."  *Id.*, Exh. "A" at 9 (citing *State v. Garcia*, 226 P.3d 370, 377 (Ariz. 2010); then citing *State v. Williams*, 800 P.2d 1240, 1245 (Ariz. 1987)).  The appellate court found the requisite state action lacking and concluded that the trial court's admission of A.'s in-court identification was proper.  Answer (Doc. 13), Exh. "E" at 9–10.

Next, the appellate court considered Petitioner's contention that "the trial court abused its discretion in denying his motion to dismiss the charges of aggravated assault, kidnapping, first-degree burglary, armed robbery, and sexual assault, on the ground that they were barred by the statute of limitations."  *Id.*, Exh. "A" at 10.  The appellate court "declined [Petitioner's] invitation to overrule [*State v. Aguilar*, 178 P.3d 497 (Ariz. Ct. App. 2008), and determined that] [a]t the time [A.R.S.] § 13-107(E) became effective, the statute of limitations for Tamplin's offenses had not expired."  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision at 13 (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).  Therefore, the appellate court concluded that A.R.S. § 13-107(E) applied to his offenses.  *Id.*, Exh. "A" at 13.

Third, the appellate court considered Petitioner argument that "the prosecutor made improper comments during closing arguments that violated his Fifth Amendment right

1   against self-incrimination and his right to a fair trial under the United States and Arizona

2   Constitutions." *Id.*, Exh. "A" at 14 (citing U.S. Const. amends. V & XIV § 1; then citing

3   Ariz. Const. art. II, 4, 10).   The appellate court noted that "[r]eversal on the basis of

4   prosecutorial misconduct requires that the conduct be so pronounced and persistent that it

5   permeates the entire atmosphere of the trial."   Answer (Doc. 13), Exh. "A" at 14 (quotations

6   and citations omitted).   The appellate court found "the prosecutor's comment was error,

7   [but] conclude[d] it was harmless beyond a reasonable doubt.   *Id.*, Exh. "A" at 17 (citing

8   *State v. Bible*, 858 P.2d 1152, 1191 (Ariz. 1993)).   The appellate court went on to consider

9   whether the prosecutor's comment in closing regarding the strength of the DNA evidence.

10  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision at 17–18

11  (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).   The court concluded that "even if

12  it assume[d], without deciding, that the prosecutor's comment constituted fundamental

13  error, [it] would not reverse because Tamplin ha[d] not established he suffered any

14  prejudice."   *Id.*, Exh. "A" at 18.   The appellate court further held that "[c]umulatively, the

15  prosecutor's comments did not constitute reversible error."   *Id.*, Exh. "A" at 19.

16          Fourth, the appellate court considered whether the trial court erred in its

17  premeditation instruction.   *Id.*, Exh. "A" at 19–20.   The appellate court observed that "[i]n

18  addition to the circumstantial evidence instruction Tamplin complain[ed] of, the trial court

19  also gave a general instruction on circumstantial evidence that applied to all the evidence

20  presented in the case."   *Id.*, Exh. "A" at 20.   The court "thus presume[d] the jury was aware

21  that it could rely on circumstantial evidence to find any element of the offenses with which

22  Tamplin was charged."   Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297,

23  Mem. Decision at 20 (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1) (citing *State

24  v. Newell*, 132 P.3d 833, 847 (Ariz. 2006)).   The appellate court also noted that "during the

25  settling of the jury instructions, defense counsel asked that the circumstantial evidence

26  language in the premeditation instruction be stricken because there was no similar

27  instruction for knowledge and recklessness[,]" but counsel went on to indicate that she was

28  not asking for such an instruction for knowledge and recklessness.   *Id.*, Exh. "A" at 20.

1    The appellate court held that the instruction was proper and also rejected Petitioner's claim

2    that the instruction was an improper comment on the evidence.  *Id.*  Regarding Petitioner's

3    objection to the *Portillo* instruction, the appellate court noted that it was "not at liberty to

4    overrule or disregard [the Arizona Supreme] [C]ourt's rulings" and declined to consider

5    the argument.  Answer (Doc. 13), Exh. "A" at 21–22.

6         Finally, the appellate court considered Petitioner's argument that "the imposition of

7    community supervision constituted an illegal sentence."  *Id.*, Exh. "A" at 22.  The appellate

8    court held that "the [trial] court erred in imposing community supervision, and [it]

9    vacate[d] that part of Tamplin's sentence.  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-

10   CR 2009-0297, Mem. Decision at 22 (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-

11   1).  Accordingly, the appellate court affirmed Petitioner's convictions and sentences, with

12   the exception of the imposition of community supervision, which it vacated.  *Id.*, Exh. "A"

13   at 23.

14        On January 28, 2011, Petitioner sought review with the Arizona Supreme Court.

15   *See* Answer (Doc. 13), Petr.'s Pet. for Review, *State v. Tamplin*, No. CR-11-0025-PR

16   (Ariz. Jan. 28, 2011) (Exh. "H") (Doc. 13-1).  Petitioner raised three (3) issues for review,

17   including whether: 1) "the identification of Gregory unreliable and result from a suggestive

18   lineup"; 2) "the prosecutor's improper comments [were] harmless error"; and 3) "the non-

19   murder charges [were] barred by the statute of limitations[.]"  *See id.*  On September 1,

20   2011, the Arizona Supreme Court denied Petitioner's Petition for Review.  Answer (Doc.

21   13), *State v. Tamplin*, No. CR-11-0025-PR, Memorandum (Ariz. Sept. 1, 2011) (Exh. "I")

22   (Doc. 13-1).

23        **C.  Post-Conviction Relief ("PCR") Proceedings**

24             **1.  Initial PCR Petition**

25        On November 10, 2011, Petitioner filed his Notice of PCR.  Answer (Doc. 13),

26   Petr.'s Not. of PCR, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Nov. 10,

27   2011) (Exh. "J") (Doc. 13-1).  On November 16, 2011, the court acknowledged receipt of

28   Petitioner's Notice and appointed counsel to represent Petitioner for the Rule 32

proceeding.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Notice—Re: Not. of PCR (Exh. "K") (Doc. 13-1).  On February 21, 2012, Petitioner's PCR counsel filed a notice pursuant to *Montgomery v. Sheldon (I)*,[7] in which counsel stated that he was "unable to find any claims for relief to raise in Rule 32 post-conviction proceedings that Petitioner wished to pursue."[8]  Answer (Doc. 13), Not. of Review; Mot. to Extend Time for *pro se* Rule 32 at 192–93, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Feb. 21, 2012) (Exh. "L") (Doc. 13-1).  On April 16, 2012, the Rule 32 court acknowledged receipt of appointed counsel's Notice of Review; Motion to Extend Time for Pro Se Rule 32, and noted that it had granted Petitioner an extension of time until April 6, 2012, to file his *pro se* PCR petition.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Ruling—Re: Pet. for PCR (Pima Cnty. Super. Ct. Apr. 16, 2012) (Exh. "M") (Doc. 13-1).  The Rule 32 court observed that "Petitioner ha[d] failed to file a Petition for Post-Conviction Relief or move for an extension."  *Id.*  As such, the Rule 32 court summarily dismissed Petitioner's PCR petition.  *Id.*

## 2.  Clarification of Sentence

On December 21, 2015, Petitioner submitted to prison officials a motion seeking a clarification of his sentence.[9]  Answer (Doc. 13), Petr.'s Mot. for Clarification of Sentence,

---

[7] *Montgomery v. Sheldon (I)*, 181 Ariz. 256, 889 P.2d 614 (1995).

[8] The Arizona Supreme Court has held that in Rule 32 proceedings, where counsel concludes that the proceeding has no merit, "a pleading defendant has a right under Ariz. Const. art. 2 § 24 to file a *pro se* PCR petition."  *Montgomery (I)*, 181 Ariz. at 260, 889 P.2d at 618. Subsequently, the Arizona Supreme Court affirmed this rule and reiterated:

> If, after conscientiously searching the record for error, appointed counsel in a PCR proceeding finds no tenable issue and cannot proceed, the defendant is entitled to file a pro se PCR.

*State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

[9] The prison mailbox rule directs that a *pro se* prisoner's federal habeas petition is deemed filed when "he hands it over to prison authorities" for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988).  Arizona also applies the prison mailbox rule to *pro se* filings.  *See State v. Rosario*, 987 P.2d 226, 228 (Ariz. Ct. App. 1999) (applying the prison mailbox rule to notice of post-conviction relief).  For Petitioner's trial and appellate filings, the Court has relied on the date the accepting court file stamped for ease of reference; however, for his *pro se* post-conviction filings and calculating timeliness, the Court relies on the date on which Petitioner handed his documents

*State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Dec. 21, 2015) (Exh. "N") (Doc. 13-2).   Petitioner requested that "the Court clarify to A[rizona] D[epartment] [of] C[orrections] that he does in fact have a parole eligible sentence on Count I and that sentence began at the same time he began to serve the sentences imposed on Counts 2, 3, 6, 7, 8." *Id.*, Exh. "N" at 4.  On February 3, 2016, the trial court reaffirmed the Sentencing Order and also explained the calculation for parole eligibility in light of Petitioner's concurrent and consecutive sentences.   Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—In Chambers Order Re Mot. for Clarification (Pima Cnty. Super. Ct. Feb. 3, 2016) (Exh. "O") (Doc. 13-2).

### 3.  <u>Second PCR Petition</u>

On February 14, 2018, Petitioner delivered his second Notice of Post-Conviction Relief to prison officials.  Answer (Doc. 13), Petr.'s Not. of PCR, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Feb. 14, 2018) (Exh. "P") (Doc. 13-2).  On March 1, 2018, the Rule 32 court acknowledged receipt and appointed counsel to represent Petitioner.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736-001, Notice—Not. of PCR (Pima Cnty. Super. Ct. Mar. 1, 2018) (Exh. "Q") (Doc. 13-2).  On April 24, 2018, Petitioner's PCR counsel filed a notice pursuant to *Montgomery v. Sheldon (I),* in which counsel stated that he "could not find any legitimate basis for relief under Rule 32." Answer (Doc. 13), Not. of Completion of Rule 32 Review at 32, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Apr. 24, 2018) (Exh. "R") (Doc. 13-2).  On April 26, 2018, pursuant to counsel's request, the Rule 32 court extended the deadline for Petitioner to file his Rule 32 petition.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order Re: Ext. of Rule 32 Deadline (Pima Cnty. Super. Ct. Apr. 26, 2018) (Exh. "S") (Doc. 13-2).

On June 5, 2018, Petitioner delivered his *pro se* Petition for Post-Conviction Relief to prison officials for filing.  *See* Answer (Doc. 13), Petr.'s Pet. for PCR, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. June 5, 2018) (Exh. "T") (Doc. 13-2).  Petitioner

over to prison authorities.

alleged that 1) "numerous oddities and inconsistencies" raised doubts about A.'s trial testimony; 2) new DNA testing of various items from the crime scene might exonerate him; 3) a significant change in the law entitled him to reconsideration; 4) drug testing of biological material from the scene could be used to discredit the victim; 5) the trial court's ruling regarding Petitioner's prior conviction prevented him from presenting a consent defense in violation of his confrontation and due process rights; and 6) ineffective assistance of both trial and Rule 32 counsel.[10] *See id.*  On July 28, 2018, the State filed its response.  Answer (Doc. 13), State's Response to Def.'s Pet. for PCR, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. July 28, 2018) (Exh. "U") (Doc. 13-2).

On September 25, 2018, the Rule 32 court summarily dismissed the petition and denied Petitioner's request for an evidentiary hearing.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—In Chambers Re: Pet. for PCR (Pima Cnty. Super. Ct. Sept. 25, 2018) (Exh. "V") (Doc. 13-2).  The Rule 32 court found that "Petitioner's argument that the victim provided inconsistent statements [wa]s not a ground included within Rule 32.1, and . . . not an argument upon which th[e] [c]ourt [could] grant relief." *Id.*, Exh. "V" at 77. Regarding Petitioner's request for additional DNA testing, "the [c]ourt note[d] that while the evidence was not previously subjected to DNA testing, Petitioner knew of the existence of these items and could have requested to them[,] . . . [and] after review of Rule 32.12(d), the [c]ourt f[ound] that Petitioner is not entitled to DNA testing of the . . . items he request[ed] to have tested." *Id.*, Exh. "V" at 78.  Next, the Rule 32 court observed that "it [wa]s unclear from Petitioner's statement what he believe[d] the significant change in the

---

[10] Additionally, Petitioner alleged six (6) check-the-box claims on the PCR Petition form, including 1) "[t]he denial of the constitutional right to representation by a competent lawyer at every critical stage of the proceeding"; 2) "[t]he unconstitutional suppression of evidence by the state"; 3) "[t]he unconstitutional use by the state of perjured testimony"; 4) "[t]he abridgement of any other right guaranteed by the constitution or the laws of this state, or the constitution of the United States, including a right that was not recognized as existing at the time of the trial if retrospective application of that right is required"; 5) "[t]he existence of newly-discovered material which require the court to vacate the conviction or sentence"; and 6) actual of factual innocence and a significant change in the law.  Answer (Doc. 13), Petr.'s Pet. for PCR at 38, *State v. Tamplin*, No. CR-20074736 (Pima Cnty. Super. Ct. June 5, 2018) (Exh. "T") (Doc. 13-2).

law to be, how the alleged change differs from the law before it, or how he believe[d] it applies to his case." *Id.*, Exh. "V" at 79.  The Rule 32 court found that Petitioner had not met his burden to demonstrate that a significant change in the law existed.  *Id.*  The Rule 32 court further found that Petitioner had waived any argument regarding his 1996 prior conviction and a consent defense, and was thereby precluded from relief.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—In Chambers Re: Pet. for PCR at 79 (Pima Cnty. Super. Ct. Sept. 25, 2018) (Exh. "V") (Doc. 13-2) (citing Ariz. R. Crim. P. 32.2(a)(3)).  Regarding Petitioner's ineffective assistance of counsel claim, the Rule 32 court reviewed the relevant test to succeed on such a claim.  *Id.*, Exh. "V" at 79–80 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); then citing *State v. Nash*, 694 P.2d 222, 227 (Ariz. 1985)).  The Rule 32 court held "that Petitioner ha[d] not demonstrated proof of ineffectiveness above mere speculation." *Id.*, Exh. "V" at 80.  The Rule 32 court concluded that "because Petitioner ha[d] not stated a colorable claim upon which may be granted," he was not entitled to an evidentiary hearing.  *Id.*, Exh. "V" at 81.

### 4.   Reconsideration of Second PCR Petition

On October 15, 2018, Petitioner delivered his motion to compel, motion for reconsideration, and motion to extend time to prison officials for mailing.  Answer (Doc. 13), Petr.'s Mot. to Compel Production; Mot. for Recon.; Mot. to Extend Time, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Nov. 7, 2018) (Exh. "W") (Doc. 13-2). Petitioner indicated that he had not received a copy of the State's response and opined that the Rule 32 court erred in basing its ruling on the same.  *See id.*, Exh. "W."  As such, Petitioner sought reconsideration of the Rule 32 court's ruling.  *Id.*, Exh. "W" at 85.

On November 6, 2018, the Rule 32 court acknowledged receipt of Petitioner's motion, granted Petitioner leave to reply, provided a copy of the State's response to him, and vacated its prior ruling.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—Criminal Order (Pima Cnty. Super. Ct. Nov. 6, 2018) (Exh. "X") (Doc. 13-2).

On December 20, 2018, Petitioner delivered his reply to prison officials for mailing. Answer (Doc. 13), Petr.'s Reply to State's Response to Def.'s *pro per* Pet. for PCR, *State*

*v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Dec. 20, 2018) (Exh. "Y") (Doc. 13-2).  On January 11, 2019, the Rule 32 court summarily dismissed Petitioner's second PCR Petition and denied his request for an evidentiary hearing.  *See* Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—In Chambers Re: Pet. for PCR (Pima Cnty. Super. Ct. Jan. 11, 2019) (Exh. "Z") (Doc. 13-2).  The Rule 32 court's new order reiterated its previous findings and conclusions.  *See id.*

### 5.  Second Reconsideration of Second PCR Petition

On January 23, 2019, Petitioner delivered his motion for rehearing to prison officials for filing.  Answer (Doc. 13), Petr.'s Mot. for Rehr'g, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Jan. 23, 2019) (Exh. "AA") (Doc. 13-3).  On February 7, 2019, the Rule 32 court acknowledged receipt of Petitioner's motion and construed it as one for reconsideration.  Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Order—Criminal Order (Pima Cnty. Super. Ct. Jan. 7, 2019) (Exh. "BB") (Doc. 13-3).  The Rule 32 court found "that the Defendant either raise[d] issues previously ruled upon or [that were] precluded." *Id.*, Exh. "BB" at 19.  As such, the Rule 32 court denied Petitioner's motion. *Id.*

### 6.  Second PCR Petition Appeal

On March 21, 2019, Petitioner delivered his petition for review seeking appellate review of the denial of his second PCR petition to prison authorities for mailing.  Answer (Doc. 13), Petr.'s Pet. for Review, *State v. Tamplin*, No. 2 CA-CR 19-0054-PR (Pima Cnty. Super. Ct. Mar. 21, 2019) (Exh. "CC") (Doc. 13-3).  Petitioner raised five (5) grounds for relief.  *See id.*  First, Petitioner asserted that the State presented improper or inaccurate information to contrive a conviction in violation of his due process rights.  Answer (Doc. 13), Exh. "CC" at 24, 28–36.  Next, Petitioner alleged that additional DNA testing might lead to evidence supporting a claim of actual innocence.  *Id.*, Exh. "CC" at 24, 36–39.  Third, Petitioner urged that a significant change in the law supported his argument that the State impermissibly shifted the burden of proof to him when it commented on the evidence in closings.  *Id.*, Exh. "CC" at 24, 39–41 (citing *May v. Ryan*, 245 F. Supp. 3d 1145 (D.

1      Ariz. 2017)).  Fourth, Petitioner asserted that the trial court prejudiced him by admitting
2      evidence of his prior conviction, thereby removing his consent defense.  *Id.*, Exh. "CC" at
3      24, 41.  Fifth, Petitioner asserted his Rule 32 counsel was ineffective.  Answer (Doc. 13),
4      Petr.'s Pet. for Review at 24, 41–42, *State v. Tamplin*, No. 2 CA-CR 19-0054-PR (Pima
5      Cnty. Super. Ct. Mar. 21, 2019) (Exh. "CC") (Doc. 13-3).

6              On June 6, 2019, the Arizona Court of Appeals granted review, but denied relief.
7      Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2019-0054-PR, Mem. Decision (Ariz.
8      Ct. App. June 6, 2019) (Exh. "DD") (Doc. 13-3).  The appellate court declined to address
9      Petitioner's claim that the State used "improper or inaccurate information," because "[t]o
10     the extent he raised this claim below, it cannot be raised in an untimely proceeding like this
11     one."  *Id.*, Exh. "DD" at 46 (citing Ariz. R. Crim. P. 32.1(a)(2)(A), (D)).  Regarding
12     Petitioner's claim for further DNA testing, the appellate court observed that it would "limit
13     [its] review to the specific arguments raised in Tamplin's petition for review.  *Id.*, Exh.
14     "DD" at 46 (citing Ariz. R. Crim. P. 32.9(c)(5)(A)) (incorporation by reference not
15     permitted in petition for review).  The appellate court found that Petitioner waived any
16     claim for newly discovered evidence, and otherwise failed to meet his burden to
17     "demonstrat[e] that re-testing of those samples probably would produce exculpatory
18     results." *Id.*, Exh. "DD" at 46–47 (citing Ariz. R. Crim. P. 32.12(d)(1)(A); then citing *State
19     v. Stefanovich*, 302 P.3d 679, 683 (Ariz. Ct. App. 2013)).  Next, the appellate court held
20     that the federal district court's decision in *May* could not constitute a significant change in
21     the law, because it "is flatly contradicted by Arizona law."  Answer (Doc. 13), Exh. "DD"
22     at 47 (citations omitted).  Finally, the appellate court found Petitioner's claim for
23     ineffective assistance of Rule 32 counsel precluded, because "[a]s a non-pleading
24     defendant, Tamplin has 'no constitutional right to counsel in post-conviction
25     proceedings[.]'"  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2019-0054-PR, Mem.
26     Decision at 47 (Ariz. Ct. App. June 6, 2019) (Exh. "DD") (Doc. 13-3) (quoting *State v.
27     Escareno-Meraz*, 307 P.3d 1013, 1014 (Ariz. Ct. App. 2013)).

28             On June 11, 2019, Petitioner delivered his petition for review seeking appellate

1  review of the denial of his second PCR petition to prison authorities for mailing.  Answer
2  (Doc. 13), Petr.'s Mot. for Recon. and Request for Oral Argument, *State v. Tamplin*, No. 2
3  CA-CR 19-0054-PR (Ariz. Ct. App. June 11, 2019) (Exh. "EE") (Doc. 13-3).  On June 27,
4  2019, the Arizona Court of Appeals denied reconsideration.  Answer (Doc. 13), *State v.*
5  *Tamplin*, No. 2 CA-CR 2019-0054-PR, Order (Ariz. Ct. App. June 27, 2019) (Exh. "FF")
6  (Doc. 13-3).  On September 11, 2019, the Arizona Court of Appeals issued its Mandate.
7  Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2019-0054-PR, Mandate (Ariz. Ct. App.
8  Sept. 11, 2019) (Exh. "GG") (Doc. 13-3).

9                              **7.  State Habeas**

10        On March 13, 2019, Petitioner delivered his Petition for State Writ of Habeas
11 Corpus Under Arizona Constitution Art. 2, § 14, and Pursuant to A.R.S. § 4121 to prison
12 officials.  Answer (Doc. 13), Petr.'s Pet. for State Writ of Habeas Corpus Under Ariz.
13 Const. Art. 2, § 14, and Pursuant to A.R.S. § 4121, *State v. Tamplin*, No. CR20074736
14 (Pima Cnty. Super. Ct. Mar. 13, 2019) (Exh. "HH") (Doc. 13-3).  First, Petitioner alleged
15 that he was convicted under an invalid law.  *Id.*, Exh. "HH" at 74–75.  Second, Petitioner
16 alleged fraud because the indictment was "fatally defective."  *Id.*, Exh. "HH" at 75.  Third,
17 Petitioner asserted that his conviction was obtained in a court that lacked subject matter
18 jurisdiction.  *Id.*, Exh. "HH" at 76.

19        On March 26, 2019, the Rule 32 court acknowledged receipt of Petitioner's Writ of
20 Habeas Corpus and construed it as another PCR petition.  Answer (Doc. 13), *State v.*
21 *Tamplin*, No. CR20074736, Order—In Chambers Re: Successive Pet. for PCR (Pima Cnty.
22 Super. Ct. Mar. 26, 2019) (Exh. "II") (Doc. 13-4).  The court found that "the Defendant
23 d[id] not make any allowable cognizable claims under a successive Notice of Post-
24 Conviction Relief."  *Id.*, Exh. "II" at 3.  The Rule 32 court further found that "the Defendant
25 fail[ed] to show how he is being held in custody beyond his sentence and fail[ed] to provide
26 a legal basis upon which to rely."  *Id.*  Accordingly, the Rule 32 court summarily dismissed
27 Petitioner's petition.  Answer (Doc. 13), Exh. "II" at 4.

28        On April 23, 2019, Petitioner delivered his Petition for Review by the Arizona Court

of Appeals to prison officials for filing.  Answer (Doc. 13), Petr.'s Pet. for Review, *State v. Tamplin*, No. 2 CA-HC 19-0003 (Ariz. Ct. App. Apr. 23, 2019) (Exh. "JJ") (Doc. 13-4). Petitioner raised a single issue for review, asserting that the trial court erred in denying relief of his successive PCR petition which alleged that his sentence was not authorized by a valid law and the trial court lacked jurisdiction.  *See id.*, Exh. "JJ."  On August 2, 2019, Petitioner filed his Opening Brief asserting four (4) issues for review including 1) the trial court lacked subject matter jurisdiction over his case; 2) his sentences were rendered in violation of *Apprendi*[11] and *Blakely*[12]; 3) the legal process was fraudulent of fatally defective; and 4) his conviction was invalid because the law was unconstitutional.  *See* Answer (Doc. 13), Appellant's Opening Br., *State v. Tamplin*, No. 2 CA-HC 2019-0003 (Ariz. Ct. App. Aug. 2, 2019) (Exh. "KK") (Doc. 13-4).

On November 25, 2019, the Arizona Court of Appeals granted review, but denied relief.  Answer (Doc. 13), *Tamplin v. Morris*, No. 2 CA-HC 2019-0003, Mem. Decision (Ariz. Ct. App. Nov. 25, 2019) (Exh. "NN") (Doc. 13-4).  The appellate court observed that "[i]n his opening brief, Tamplin d[id] not address the trial court's decision to treat his petition as a successive notice of post-conviction relief."  *Id.*, Exh. "NN" at 69.  Upon review of Arizona law, the appellate court held that the Rule 32 court "did not err by treating Tamplin's filing as a notice under Rule 32[,] [n]or did [it] err in summarily dismissing the proceeding."  *Id.*

On December 23, 2019, Petitioner delivered his Petition for Review by the Arizona Supreme Court to prison officials for mailing.  Answer (Doc. 13), Petr.'s Pet. for Review, *Tamplin v. State*, No. CV-19-0335 (Ariz. Dec. 23, 2019) (Exh. "OO") (Doc. 13-4).  On March 27, 2020, the Arizona Supreme Court denied the petition for review.  Answer (Doc. 13), *Tamplin v. Morris*, No. CV-19-0335-PR, Memorandum (Ariz. Mar. 27, 2020) (Exh. "PP").

. . .

---

[11] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[12] *Blakely v. Washington*, 542 U.S. 296 (2004).

### D. The Instant Habeas Proceeding

On December 17, 2020, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Petitioner asserts five (5) grounds for relief. First, Petitioner alleges a violation of his due process rights alleging that the State "knowing[ly] use[d] or present[ed] . . . improper and inaccurate information [and] contrived a conviction[.]" Petition (Doc. 1) at 6. Second, Petitioner alleges that the trial court "abused its discretion or exceeded its jurisdiction when it denied Defendant's petition requesting DNA testing of previously untested items of evidence in the State's possession or under its control where request for DNA testing has potential to provide exculpatory and exonerating evidence based on the advancement of technology and such denial denied Defendant due process of law and access to the court in violation of the Fifth/Sixth or Fourteenth Amendment of the United States and Arizona Constitution." *Id.* at 15. Third, Petitioner urges ineffective assistance of his post-conviction relief counsel because he allegedly failed to raise ineffective assistance of trial counsel. *Id.* at 21. Fourth, Petitioner asserts that the trial court lacked subject matter jurisdiction over the charges in his indictment. *Id.* at 27. Finally, Petitioner claimed that his sentences are illegal or imposed illegally in violation of his Sixth or Fourteenth Amendment rights. *Id.* at 28.

On April 19, 2021, Respondents filed their Limited Answer (Doc. 13), and Petitioner replied (Doc. 14).

## II. STATUTE OF LIMITATIONS

### A. Timeliness

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

(A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013).   On September 1, 2011, the Arizona Supreme Court denied review, thereby affirming the Arizona Appeals Court decision upholding Petitioner's convictions and sentences, with the exception of the imposition of community supervision, which it vacated.  *See* Answer (Doc. 13), *State v. Tamplin*, No. CR-11-0025-PR, Memorandum (Ariz. Sept 1, 2011) (Exh. "I") (Doc. 13-1); Answer (Doc. 13), *State v. Tamplin*, No. 2 CA-CR 2009-0297, Mem. Decision (Ariz. Ct. App. Nov. 29, 2010) (Exh. "A") (Doc. 13-1).  As such, Petitioner's judgment became final on February 18, 2012, after the expiration of the ninety (90) day period to file a petition for certiorari from the Supreme Court of the United States.  *Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) ("[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [90-day] period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner

actually files such a petition.").

Pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent tolling, on February 18, 2013. *See White*, 281 F.3d at 924 ("[T]he question of when a conviction becomes final, so as to start the running of the statute of limitations under § 2244(d)(1)(A), is fundamentally different from the question of how long the statute of limitations is tolled under § 2244(d)(2)."). Petitioner filed his Petition (Doc. 1) on December 17, 2020. Therefore, absent tolling, the Petition (Doc. 1) is untimely.

### B.   *Statutory Tolling of the Limitations Period*

The limitations period is tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 552 U.S. 3, 4 (2007). An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (collateral proceeding "determined" when the Arizona Supreme Court denied petition for review).

"[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'" *Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004)). Petitioner filed his Notice of Post-Conviction Relief on November 10, 2011. Answer (Doc. 13), Petr.'s Not. of PCR, *State v. Tamplin*, No. CR20074736 (Pima Cnty. Super. Ct. Nov. 10, 2011) (Exh. "J") (Doc. 13-1). Here, the statute of limitations had not begun running when Petitioner initiated his PCR petition by filing his PCR notice. On April 16, 2012, the Rule 32 court summarily dismissed Petitioner's PCR petition, because he had "failed to file a Petition for Post-Conviction Relief or move for an extension [of time]." Answer (Doc. 13), *State v. Tamplin*, No. CR20074736, Ruling—Re: Pet for PCR (Pima Cnty. Super. Ct. Apr. 16, 2012) (Exh. "M") (Doc. 13-1). Petitioner did not appeal

1    this decision to the Arizona Court of Appeals.  As such, the Rule 32 court's order became

2    final thirty-five (35) days later, on May 21, 2012.  *See* Ariz. R. Crim. P. 32.16(a)(1), 1.3(a).

3    Petitioner's time to seek habeas relief expired one (1) year later on May 21, 2013; however,

4    Petitioner did not file his Petition (Doc. 1) until December 17, 2020.  Accordingly, the

5    Court finds, absent equitable tolling, Petitioner's Petition (Doc. 1) is untimely.

6                    **C.**     ***Equitable Tolling of the Limitations Period***

7            The Supreme Court of the United States has held "that § 2244(d) is subject to

8    equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  The

9    Ninth Circuit Court of Appeals "will permit equitable tolling of AEDPA's limitations

10   period only if extraordinary circumstances beyond a prisoner's control make it impossible

11   to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quotations

12   and citations omitted).   Moreover, Petitioner "bears the burden of establishing two

13   elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

14   circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also*

15   *Holland*, 260 U.S. at 649 (quoting *Pace*).

16           Petitioner references the filing of his second PCR petition and subsequent petition

17   for a State writ of habeas corpus, as well as the avoidance of "piecemeal litigation" as

18   grounds for equitable tolling.  Petition (Doc. 1) at 31.  Petitioner fails to recognize that the

19   statute of limitations had already run by the time those pleadings were filed in the state

20   court.  Petitioner further references the difficulties related to the COVID-19 pandemic as a

21   reason for this Court to equitably toll the statute of limitations.  *Id.*  He fails to explain how

22   an event that began in 2019 affected his ability to file a petition in this Court in 2013.

23   Petitioner's Petition (Doc. 1) and Reply (Doc. 14) are devoid of any facts to support that

24   he had been pursuing his rights diligently.  Furthermore, Petitioner has failed to meet the

25   "very high threshold" of establishing that extraordinary circumstances beyond his control

26   made it impossible for him to timely file a habeas petition *and* that those extraordinary

27   circumstances were the cause of his untimeliness.  *United States v. Battles*, 362 F.3d 1195,

28   1197 (9th Cir. 2004).   As such, Petitioner is not entitled to equitable tolling and his habeas

petition is untimely.  The Court recommends that Petitioner's Petition (Doc. 1) be denied because it is untimely.

### III.   CONCLUSION

Based upon the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is untimely and should be denied.

### IV.   RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number: **CV-20-0548-TUC-CKJ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 3rd day of May, 2023.

Eric J. Markovich
United States Magistrate Judge